The last case is 21-2931 Eastern Missouri, Ricky Tillman, Jr. v. BNSF Railway Company et al. Ms. Lee? May it please the Court, my name is Allison Lee and I appear on behalf of Appellants BNSF Railway Company and Donald Handy. This case goes to the core of this Court's long-standing commitment to protect a defendant's fundamental right to remove cases to federal court by preventing voluntary dismissals from being yielded as a tool of foreign shopping to defeat that very right. The District Court decision below should be reversed because the District Court erred in three ways. First, the District Court did not consider whether plaintiff engaged in foreign shopping as required by this Court under Ham and Thatcher. Second, and alternatively, if it's found that the District Court did consider foreign shopping, the conclusion it reached was an error in light of the evidence of the record. And finally, the District Court erred in the manner in which it weighed the three factors set out in Ham. Given the District Court's failure to apply the appropriate legal standard, but that the information is fully briefed and before this Court, this case should be remanded with directions for the District Court to deny the motion for voluntary dismissal. First, this District Court erred in failing to apply the standards set forth in Ham and Thatcher. While first announced in Ham, Thatcher crystallized that District Courts must consider whether a party is engaged in foreign shopping or is seeking to avoid an adverse ruling in seeking voluntary dismissal. If so, these are disqualifying modifications that do not permit dismissal to occur. Indeed, as Judge Grunder had pointed out in his dissent in Blaze v. Johnson & Johnson, it is possible that a litigant would have a proper purpose and yet still be guilty of foreign shopping. So it is critical that that analysis proceed first. That's why the Northern District of Iowa recently determined in Morrow v. United States that the order of inquiry is to first consider whether there is any foreign shopping or there is an adverse decision that is thought to be avoided. And only if those are not present in a case should a court proceed to weigh the three factors originally outlined in Ham. Counsel, help me understand what we actually said in Ham. I thought that the court said that a party is not permitted to dismiss merely to seek a more favorable form, but it didn't preclude the court from looking at a variety of factors. Correct, Your Honor, but that standard was crystallized in Thatcher. And as Thatcher lays out the standard, it sets forth the three-factor standard. And then it says, likewise, that a voluntary dismissal cannot be used for foreign shopping or to avoid an adverse purpose. By contrasting the standard in that way, it made clear that if foreign shopping is present, then that is the end of the analysis. And indeed, courts have applied it that way. When Thatcher was remanded, the district court specifically determined that once— When have we applied it that way? Because I don't read it that way or as necessarily that way. I think it's been read that way specifically with respect to distinguishing the three factors from— I don't know. I'm talking about Eighth Circuit precedent interpreting Thatcher as creating a categorical alternative test. Those factors have not been before the Eighth Circuit to allow that to happen. The cases that the Eighth Circuit has considered, there has been a pretextual reason, but that has been the sole purpose. And when that pretextual reason has been analyzed and found to be foreign shopping, the Eighth Circuit has to determine that it was appropriate for dismissal. For example, in Donner, the Eighth Circuit looked at the state law claims that the plaintiff wished to raise that would justify dismissal and refiling in state court and determined that all of those claims were legally frivolous. Because it found that there was that pretextual reason of foreign shopping, it determined that dismissal was not appropriate on those grounds. It's also at the heart of the Thatcher reasoning and outlining that the district court correctly analyzed the other factors under him, but that it needed to reconsider it because it had not considered foreign shopping. If foreign shopping were not a trump card, then there would be no reason for the district court in Thatcher to reconsider. Doesn't Blaze, though, the court's opinion in Blaze suggests that by denying or by granting the motion to dismiss, the court implicitly considered foreign shopping and rejected it? It does, Your Honor. However, this is different from Blaze in the sense that we have a footnote from the district court judge that specifically identifies that he is not applying the foreign shopping test. At the defendant's or appellant's addendum at A03, footnote 2 of the district court's order specifically says that BNSF has raised Thatcher v. Hanover as a decision that plaintiffs should not be permitted to foreign shop involuntarily dismissing. And then he states, and I quote, that case did not involve a situation like that here, in which a parallel and unremovable state court case presents the risk of inconsistent verdicts. I don't read it as him saying I refuse to consider it. I read it as him saying that's a different case. There's a legitimate reason here. Isn't that enough under Blaze to sort of say he implicitly considered the arguments that were made? No, Your Honor, in the sense that there would be no reason to distinguish Thatcher unless the court was not even considering Thatcher whatsoever. But further, as Your Honor pointed out in your dissent in Blaze. But I was in dissent. Yes, Your Honor, but then Judge Loken just last year in the Graham versus Mentor Worldwide case, cited to your opinion as the appropriate explanation for how this factor and analysis should be considered. And he was sitting in the majority in that case. You also pointed out in your dissent, Your Honor, that Blaze's majority opinion conflicted with prior decisions. And given circuit precedent and rules, it was appropriate to apply the earlier decision, which is Thatcher. And in that case, when there was silence as to the factor, the court remanded for consideration of that factor. Thatcher did not overrule Ham. It was not an unblocked decision, was it? No, Your Honor. And Thatcher just crystallized and explained further the meaning of Ham, but is entirely consistent. It can't change the meaning of Ham, can it? It cannot. It cannot. But by its further application and how it applied Ham, it's entirely consistent with Ham. So Thatcher is not required to overrule Ham. Very briefly, the record does demonstrate ample evidence of forum shopping. And first, we have plaintiff's own words that he was going to a state court for him. Second, plaintiff never attempted to amend to name the city of Hayti, the key reason why they were seeking this other litigation. Never tried to amend them and state a claim against them in federal court. And there's simply no reason why they couldn't have done that. While they complained about — Counsel, I just — you know, we keep talking. You keep telling us what Thatcher means, but I'm reading from it. After saying, at the same time, however, the court failed to address Thatcher's purpose in seeking to voluntarily dismiss. And then in the next column, Thatcher set forth no adequate reason why it would benefit the class to abandon these additional claims. Now, that's completely distinguishable from this case on multiple — for multiple reasons. How can you say Thatcher is categorical? And therefore, when the Supreme — when the district court says that there's something different here, it's an error of law. The key issue is also the language of the Thatcher district court opinion that this court was reviewing. When looking at that language, which is quoted in the brief, it is almost identical to the footnote that the district court here used in its footnote distinguishing Thatcher. But the district court identified an adequate reason, in this case depending of dependency in state court of claims involved by and involving parties not in the federal case, that would obviously be rolled and were being rolled together in the state court for a single judicial answer to the problem. That's an adequate reason. Now, yeah, it isn't the same — it isn't the same reason as Thatcher. Your Honor, it's simply a pretextual reason, as you pointed out in Graham v. Mentor. Which is pretextual? The inconsistent verdicts. No, no, I wasn't talking — no, I was talking about judicial economy and efficiency. Correct, Your Honor. So judicial economy and efficiency would be properly considered under the waste of resources. And the district court improperly really abandoned the three factors below. I'm sorry, counsel, but judicial economy and efficiency are always relevant. And you don't put them in a particular garbage can. Of course not, Your Honor. And they're important. And that's why those three factors are outlined the way that they are. Even though judicial economy or waste of judicial resources is a factor to be considered, it is not the controlling factor. Instead, this court's precedent teaches that the right to a federal forum and forum shopping are. I see that my time has expired. If I fully answered your question, I will yield the rest to my opponent. Very good. Thank you. Mr. Davis? Thank you, Your Honor, and may it please the court. I wanted to pick up first with the initial point Ms. Lee raised about the district court allegedly failing to consider forum shopping. I would agree with what Judge Grunder brought up a few moments ago about a natural, more natural reading of the order, being that the court read the party's extensive arguments on this point, went through the briefing, and when discussing Thatcher, which was proffered as a case to illustrate why we were allegedly trying to forum shop, the court explained, no, that case is distinguishable here. Part of the interest that we have going on is the plaintiff is at risk of dealing with some piecemeal litigation that can often arise in this type of case, as we discussed in the brief. Train collision cases can frequently raise this type of problem because you've got a driver, you've got a passenger, you've got the railroad and its employees, and then you may have a municipality or another state agency that's involved in maintaining the road, constructing portions of the track, maintaining the property. And so given Judge Limbaugh's experience with this type of phenomena, you know, I think that's the more natural reading of his order. Point two, with respect to the argument that Judge Limbaugh erred in finding that there was no forum shopping. Again, it's a reasonable conclusion on his part. The standard here is whether he abused his discretion. And for the reasons we've explained at length in our briefing, we just don't think that he can be fairly convicted of abusing his discretion on the facts of this case, especially when, as was discussed earlier, you know, a few moments earlier, Thatcher, which again has been proffered as one of the biggest cases allegedly showing why there was forum shopping. Thatcher involved that class action fairness phenomena where really what the plaintiff's trying to do is merely offering an intent to go file back in state court to stay under some threshold that would allow them to avoid federal jurisdiction. You know, as Judge Loken brought up, that's clearly not what we've got going on here. Another point that was raised was the failure to add the city of Hayti in federal court. Again, I don't think Judge Limbaugh can be faulted for not finding that argument persuasive. Adding the city of Hayti to the federal case would not help unify and consolidate this proceeding. We'd still have the problem of fractured piecemeal litigation, which can just be a headache for two judicial systems as well as the parties. You know, I can tell you, we're not the biggest shop around here. We got maybe four or five lawyers who could pitch in if we're trying to deal with parallel litigation. And I can assure you, we feel more comfortable and better able to represent our clients if we got everything streamlined in one case as opposed to spreading it across multiple fora. So kind of just add that on that point as well. And in terms of the final point that Miss Lee brought up, and I'm not sure that she had adequate time to address it, was whether the district court erred in weighing the factors. And on that particular point, I wanted to direct the court to a case that we cite in our brief. I believe it's called McKnight. And it didn't involve a motion for a voluntary dismissal without prejudice. But it applies and considers the standard of review in a way that that struck us as thoughtful. And basically what the court said is, listen, this is I believe it was perhaps an expert type of evidentiary issue in that case. And the court said, listen, this is a relatively familiar issue. The district court was experienced. There was briefing on this point. It's fair to presume that the court properly considered all of the relevant factors and that it didn't consider any improper ones. And therefore, the only issue before the court for purposes of appeal is whether the court made some clear error of judgment and can be faulted and how it weighed those factors and made its final decision. And, you know, I think that's an appropriate way to look at this case as well for reasons we've noted in our brief. And to kind of tie that all together, we've gone through the first factor, the explanation for the motion to dismiss. We've got the second factor, which is basically what's the cost? What's what's the harm to judicial economy if this motion is granted? I don't think that there was really any meaningful dispute about whether this would further judicial economy. The case had not progressed that far, your honors. There was some slight initial motion practice. And then shortly after that, that's that's pretty much the extent of it before the motion to dismiss was granted. And in the meanwhile, I think it was certainly proper for Judge Limbaugh to take into account, hey, with these types of train collision cases, certainly it would better serve both the state and federal judiciaries. If we go ahead and just coordinate this in one more convenient forum where we can actually lump all the parties together, get everybody in one sitting and take care of this. So that's that's item number two. And then item three, legal prejudice. I for reasons we've explained at length in our brief again, and I don't think anybody could fairly fault Judge Limbaugh for concluding that there was not some clear legal prejudice that warranted against a dismissal here. Whether you look at the punitive damages claim issue, you know, however you want to slice it. So at the risk of of forfeiting a few more minutes, really, that's all I got, your honors, unless you have a few more questions or things you'd like to ask me. Hopefully I can be more helpful. Very good. I think Ms. Lee used up her time. Yes. Yes, your honor. Well, the case has been thoroughly briefed and argued and we will take it under advisement. Thank you, counsel.